Good morning, Your Honors. May it please the Court, my name is Rosemary Rivas on behalf of the Plaintiff and Appellant Aleta Lilly. Plaintiff's claims under California law are not preempted because they are based on conduct that violates the National Labeling and Education Act and its promulgating regulations. The regulations and the statutes at issue clearly state that the nutrition information, including the sodium content, shall be based on, shall be stated for all food that is intended for human consumption. Let's cut to the chase because we know what this is all about. You're supposed to spit out the seeds, get to eat the kernel, and we're dealing with the coating on the seeds, right? The food on the seeds, yes. The salt and the seasonings are food. They have values on the reference amount of customarily consumed foods. Your primary concern is just the sodium, right? Yes, the sodium. Because And the sodium is added to the shell, in the coating. Yes. The sodium is It's not sodium inherent in the shell. This is sodium that arises from adding a coating to the shell. Yes, a food coating. And the difference is substantial. It's, you know, 120 milligrams of sodium versus 1250 grams of sodium. I call it a coating, but it actually is absorbed, isn't it? It is absorbed. Sodium is absorbed. I mean, I was eating pistachios last night. They have salty shells, too. What's the difference? Well, they're the red of the plant. They were California pistachios. Were they in the shell, Your Honor? Yes. And were they good? Very good. Well, the question is here, how is this product consumed, how is it packaged, and how is it marketed? It's marketed that you put a handful, not just one, but a handful in your mouth, that you store them in your mouth, and that you transfer one seed shell at a time to the other side of your mouth, and then you spit them out one by one. During that process, you're consuming, you're digesting the food that's added to that shell. Suppose you have salted-to-the-shell peanuts, but there's not a coating. Would that be a different situation? If you have just the nuts without shells and you add... I mean, you have peanuts that you get at a ballpark, you know, but there's not a coating on it. They're just salty somehow. They're salty in the shell. The salt is in the shell, and then you pull them. Right. I think in that situation, you would not label, you would not include the sodium content for that shell. Should we ask the FDA to express its views? No, Your Honor. I think because the regulation in the statutory scheme, in our view, is clear... What if it's not clear in my view? What if I have some difficulty? Should I ask the, should we ask the FDA to tell us? After all, the question is whether this is inconsistent with their regulations. They probably know that. Why shouldn't we ask them? Your Honor, there have been district courts that have referred questions to the FDA. For example, with the all-natural litigation, and the FDA has declined to issue a ruling on what it means. Yeah, I wasn't thinking about a ruling. I was thinking about inviting them to file an amicus brief, and if they decline that invitation, then I guess we move on on our own. But if they accept that invitation, we'll know their views. What's wrong with that? Well, I don't think their silence should be interpreted one way or the other. No, I wouldn't interpret their silence. But what if they show up and say, my God, Ms. Lilly is right. Administrative Procedure Act sets out some rigid requirements for the adoption of these regulations. If you don't like the regulation, why don't you take it to the FDA and say this needs to be modified? Well, the state of California... You don't like the regulation. Well, it's not that I don't like the regulation. It's that I believe it means something. For instance, let's take if you had sunflower seeds without the shell, and you covered them in chocolate, or you covered them in caramel with sea salt. You would put the nutrition information, including the sodium, for that food. You wouldn't just put it for the kernel. And just because there's a shell here doesn't mean that you shouldn't list the sodium of that food that's placed on the shell. I don't think there's a page limit on the Federal Register or on the length of these regulations. They can set out as much detail in the regulation as they feel or you feel perhaps. You're not quarreling with the regulation, are you? You're just saying they didn't comply with it. Yes, we are saying that the defendant did not comply with the regulation. And I'd like to say there's a difference between what the serving size is in calculating the amount of the sodium. Those are two separate acts. And there's guidance that the FDA has actually provided, and it's in the record. It's an FAQ. It's at 36. The question is, how do I determine what values to declare on the nutrition facts label? I'm sorry, I just want to know, where are you reading from? This is an FAQ on the excerpts of record at 36. From? These are answers provided by who? The FDA. Okay. And the response is, the nutrient values declared on the nutrition facts label are based on the nutrient profile of the product as packaged. Okay. Are you challenging the preemption of the federal regulation over California law, or are you accepting the fact that the FDA regulation applies? Well, under the National Labeling and Education Act, only state laws that are not identical are preempted. And you're claiming that that means you're accepting the fact that the regulation is the applicable? Yes. Yes, Your Honor. And the law that we are suing under, the Sherman Act, adopts all federal regulations. And that's the statute that we are suing under, in addition to the unfair competition law and other California consumer statutes. So in our view, it's clear that you base the sodium content on a food, based on the edible ingredients. There's no question that the salt and seasonings are food, that they are edible, that they are absorbed. The defendant hasn't disputed that they're edible, that they're food, or that they're absorbed. The regulation expressly says, not bone, seed, shell, or other inedible components, but it specifically says shell, and we're talking about the shell, aren't we? We were talking about how you state the nutrient content. Then there's a separate regulation that Your Honor is reading from, which states how do you state what your serving size is. And the regulation says your serving size is not based on inedible components. And so the serving size is different from your nutritional amounts. So let me understand this, because I didn't think much or I understood it from your briefs. What you're saying is that even if sodium is contained within the shell, then it needs to be disclosed as part of the sodium component of a serving size? No. What we're saying is the shell is considered inedible. I understand. And I thought your argument was, yes, the shell was inedible, but if stuff is added to the shell that is intended for consumption, that is edible. Yes. That's your argument, right? Yes, Your Honor. Okay. And so it's only the shell that is excluded from the serving size. The shell in its natural condition? Is that your position? Yes, in its natural condition. So the edible portions, the salt and the seasonings, are not excluded from the serving size. But our position is still that these are two distinct processes determining what the serving size is and determining what the sodium content is. They're different. One doesn't depend on the other. So simply because the serving size is stated, in other words, excuse me, in other words, you don't calculate how much sodium is in the product based on what the serving, how the serving size is stated. And I'd like to give a little hypothetical that will explain that. Because the regulation says. What's your hypothetical? What's the hypothetical? Well, my hypothetical is that say your total bag, it has 90 grams of product. Say that total bag of all edible components has 3,000 milligrams of sodium. What the statute is saying is we don't want you to state the whole 3,000 grams in the nutrition box. We want you to state your sodium in relation to what your serving size is. So that's how we interpret that. You've got about four minutes left. Did you want to save some for rebuttal? Yes, Your Honor. Thank you. Good morning. Good morning, Your Honor. May it please the Court. My name is Pat Brookhauser on behalf of ConAgra Foods, Inc. At the beginning, let me clarify a fundamental flaw in the plaintiff's argument. Plaintiff's counsel, appellant's counsel, just said that the serving size does not relate to the nutrition listing of sodium. That's flatly incorrect. And at page 13 of our brief, we set forth the statute and the regulation that clearly state sodium is to be listed per serving. Whether it's to be listed per serving or not, I think the crux of this case for me is whether or not you need to include in your serving size how much sodium per serving size is, how much sodium you've put on the shell. Right? I understand. That's the crux of their argument. And it was the crux, I think, of the district court's determination that this was preempted. Correct. Okay. So you add this for the purpose of ingestion, no doubt. Why shouldn't it be counted? Well, it shouldn't be counted because the regulation says that you calculate the serving size excluding the inedible shell. Right. The inedible portion of the shell. And there is no principled basis for the distinctions that the appellant's counsel wants to draw between added salt or sodium and artificial salt and sodium that has no basis in the statute or the regulations. Let me suggest one, that if you're selling the food in its natural form and you don't count whatever is inside its natural form, but if you add stuff to it, then the consumer deserves to know. What's wrong with that? If we were starting from scratch. Well, what's wrong with that as a matter of interpreting the statute? The statute talks about the inedible shell, but we just don't have, here we not only have the inedible shell, we have the additional food that you've put on the inedible shell. Well, let me first state, in the complaint, there really is no distinction drawn between the shell and any sort of salt or sodium. If you look at the complaint, it's all together. The sodium on the shell, the shell's sodium, and the distinction that the appellant's counsel is trying to draw now between some sort of artificial or added sodium and natural sodium is analogous, I submit respectfully, to the argument in Turek that the Seventh Circuit held it was preempted. There, the FDA said, you have to disclose fiber. And the plaintiff came in and said, well, there's certain kinds of fiber that are processed fiber, they're not as good as unprocessed fiber, and you ought to have to disclose what's processed versus unprocessed. Unless they coat these with cocoa powder, what then? Would they have to disclose what the coating is? If the... Dust them with cocoa powder. You know, there's cocoa powder on the shell. No. Don't have to disclose that. It's not part of the edible component that's part of the serving size, Your Honor. Even though you ingest that? And if we were starting from scratch, we could have a system. It would be very easy and much... Forget the scratch. I mean, even now, why wouldn't you have to disclose that there's chocolate on the shell? Or there's... You name it. Not in the nutrition facts panel. Well, I take that back. The chocolate, you may be venturing forth from the actual regs. The regs set for specific nutrients that have to be listed in 101.9C. And one of them is sodium. I don't know whether cocoa puffs and the chocolate and everything, how that would fall within the nutrition panel requirements. But the FDA has been very specific about sodium. And they say sodium needs to be listed per serving. And there are a number of other... Suppose they coat it in sugar. Would they have to disclose that? Sugars are part of the nutrition facts panel. But under your construct... The answer is no. If it's on an inedible component, whether it's natural or artificial or added or... Even if you eat it? If you were to eat it, then presumably, if it were a different product, then the FDA would have considered that an edible component. You're supposed to eat the coating, but not the shell. Which is, I gather, the way you're supposed to consume these things. You're supposed to lick off the coating or absorb the coating, whatever. And they come in different flavors, right? Ranch and other things, jalapeno. Correct. I say a lot of... If you're supposed to consume it, why isn't that separate from the part that you throw out? It is permissible to list that, but it is not required. And there's nothing in the regs... You say that, but you haven't said why. There's nothing in the regs that requires that. It says you exclude it. You're saying it's optional. It is optional. Why is it optional if that's the part you're supposed to consume? Because the food is the sunflower seeds. Says who? The food. That is the... The sunflower seed is the food. Well, but it's also the coating that you... Well, but really, what they want to do is take a nutrient or an ingredient and carve that out of the inedible component of the shell. Why... Again, let's go back to my... Why isn't a reasonable reading of this regulation that, look, you can't control inedible portions of things that you sell? If you pick a walnut off a tree, what's in the shell is in the shell. And if you... But when you add stuff, then it ought to be covered. When you add stuff, it's intended for consumption. So nobody expects you to consume the bone. Nobody expects you to eat the shell. But if you added a food nutrient to those things with the express intent that it be ingested, why isn't that a fair reading of this statute? I don't think there's any basis in the statute or the regs... ...for that added versus natural distinction. And if we went down that path, then where would we draw the line? What if... Oh, yeah, it's an easy line for me. You add it, we count it. You don't add it, we don't count it. That's a pretty easy line, isn't it? Well, what they want to say now is that, but what if you were to chew on a bone or suck on an olive pit and we were to learn that you would get nutrients that way? Would those have to be listed? Those should be pretty clearly excluded from the statute. My question is... Let me rephrase it. You added this stuff. The allegation is that it's added. Yeah, that's the allegation. For purposes of this... And I don't think there's any doubt that it was added. These sunflower seeds don't grow naturally with ranch or jalapeno dressing on them. So you added it. Why doesn't it count when you added it? And that's an easy line. That's an easy line to draw. If it's there naturally in the inedible portion of the shell, God bless. If it's not there naturally and you added it, it's covered by the rag. What's wrong with that? That's not the line that the FDA drew. There is nothing in there that says anything about added versus natural in this context. Any definition of what's edible and what's inedible? I mean, I've seen some baseball players that look like they hold these in their mouths for the whole game. Well, we cited... Without any shells. Yes, Your Honor. We cited in our brief, edible, the natural, common sense meaning is eaten. And in the Federal Register, and the FDA went to great lengths to try and explain the serving size rules. And they have a large number of reference amounts. And in the Federal Register, they explain that pits or seeds, and there are examples of things that you might have in your mouth or shells, you might have in your mouth a peanut shell or something, but spit out, that is not edible. Well, I've got a bird feeder. The birds spit out the shells, but the squirrels eat the whole thing. I mean, it depends on who's eating it, right? It would depend on that. But the FDA's examples that they gave are of nuts and seeds or pits that get spit out. I guess other animals might do different things with them. But the definition of edible would be something that you consume, eat, and swallow. Inedible would be, under the FDA's example, something that you then spit out, perhaps, even if it does enter your mouth. Should we ask the FDA what its view is? Well, Your Honor, what I would prefer is that you affirm. Of course. I mean, it's hard to win. I start out with that. I know. I've seen you. I think you're going to lose. Would you like to give it? Yeah. If you were to decide that the regulation was ambiguous, I think it would be appropriate to say that it falls within the zone of primary jurisdiction, and the FDA ought to clarify that. Well, no, but you're explaining to me other ways you think you ought to win. My question is a different one. My question is, should we say to the FDA, we have these two people in front of us arguing about what this regulation means. Would you file an amicus brief and tell us what you think it means? I would think the primary jurisdiction would be preferable from my perspective. I understand. And I would think you could remand and have the district court, if that were where you were going, have the district court apply primary jurisdiction. I'm not sure how. But, you know, you're answering a different question than what I asked. I think asking them to weigh in would be fine. I'm not sure how an amicus brief after our briefing would work, whether we'd get a chance. Well, we could say that. We'd like to know whether or not you think this includes the gunk, gunk is the wrong word, the stuff that these folks put on the outside of the shell and is absorbed in it. And please let us know in 30 days whether you'd like to tell us that. If you don't, we'll decide it on our own. But if we have your views, they might be helpful to us. What's wrong with that? I don't think there's anything wrong with that. I don't know whether when you do that, whether. They may say, we're too busy. They may. I don't know whether we would get a chance to address that, respond to that. No, you've already. All I want to know is what they think. Yeah. I don't. I really don't. I know what you think. You've already told me. That's certainly within your authority to do. And if you think it's unclear, that would seem to be a reasonable thing to do. If you added caffeine, for example, the FDA regulations would require you to report that, would it not? I haven't researched the caffeine issue, Your Honor. I mean, you know, there are lots of things. I mean, you could add vitamins, I suppose. Once again, there are a lot of very technical regulations. I've looked at the sodium regulation here, which talks about per serving. I don't know for sure about the caffeine. I'm sorry. Sodium seems to be what's at issue here. It is. I'm just thinking about you could add all sorts of things. And some of those, you'd have to report them, I know, even if it's in the shell. Well, and I think I haven't researched caffeine, but I do think there's a distinction between listing ingredients and listing nutrients. The nutrients specifically say they're per serving. There's a separate ingredients regulation that doesn't limit it to per serving. So the FDA has drawn a distinction there between ingredients and the nutrition facts. Nutritional is what we're talking about here, which in turn references serving size. It does. And if I could just follow up on that, Your Honor. The serving size here, they allege the serving sizes say they're in kernels. And then they say that the serving is kernels and the nutrition information is per serving. So it's fully disclosed that that is the basis of the serving, and that is that the information is per serving. So we also have an argument that, therefore, no reasonable consumer. But that's not a preemption argument. It's not a preemption argument. That's the only issue in front of us is preemption. I don't know that it is. We briefed the no reasonable consumer. It could be a deceived issue. I think you can affirm on any ground. But if we were to get to there, shouldn't we send you back to the district judge and let the district judge deal with that issue? I don't think so on these facts. I think it's pretty clear that on the allegations here where it says the serving is per kernel. See, I don't think a reasonable consumer. I mean, here's a reasonable consumer who looks at this package and says, I'm going to have five sunflower seeds, stick them in my mouth. And my guess is from that that I'm going to consume five times the number of sodium that you've disclosed. You don't think a reasonable consumer would be misled to find out that he's consuming far more than that amount? Because a reasonable consumer would have interpreted kernels to mean the inside of the sunflower seed, even though he doesn't swallow that either? I think the inside of the sunflower seed, they probably do swallow. I know, but he would interpret it to mean that it's only the part that he swallows, that he's only getting sodium from the part that he swallows. Yeah, I think kernels is very clear, and it's used in the regulations. Kernels is not a term of art. My impression is this is a strict liability kind of thing. If you have to disclose it, you have to disclose it. It doesn't matter whether they're deceived or not. Is that true, or am I wrong about that? No, it's a deception case. Under California law? Yeah, they're California claims. It's not a claim under the Food, Drug, and Cosmetic Act. There is no private right action under that. They're State law claims. Thank you. Ms. Rivas, you get the last word here. Thank you, Your Honors. I'll be brief. The complaint does allege that salt is being added, and it's not about the natural sodium that's found on the bear's shell. The ingredient list on the package also lists several ingredients that have sodium, such as tomato powder, onion powder, the actual salt. So when a person is looking at the ingredients and looking at the package, they could conceivably believe this stated amount of sodium is all that I'm consuming. So you're now arguing that if this is not preempted, you state a claim under California law? Yes. But that's not an issue the district judge reached. It's not, Your Honor. The nutritional facts panel is what you're taking issue with. What's on the side that says nutritional facts? Yes, Your Honor. And, for example, just because it says kernels, that doesn't mean it doesn't include all the salts and shells. I'm sorry, all the salts and seasonings. For example, when there's a food category for pizza, and pizza's listed, and it doesn't say what the ‑‑ it says what the sodium content is, and that sodium content is for that entire food that you're consuming. But you're not contending in this case that the sodium or other things added to the shell make their way into the kernel, are you? No. It's food that is on the shell, and it ‑‑ So your allegation that it's food relates only to the stuff that's coated onto the shell. Exactly. You're not arguing that after you put it onto the shell, it migrates into the kernel and therefore is ingested when somebody ingests the kernel. That's correct, Your Honor. And I think the statutory language couldn't be any clearer. It says inedible or edible. And the only thing it excludes from the serving size are things that are inedible. And when you look at the plain meaning of that, that means that this added food, the salt and the seasonings, should be included when you calculate the sodium. And then if a statute or a regulation is vague, there are steps for this court to take. And that's to interpret the statute in a way that meets the purpose of the legislation. And that purpose here is so that people know what they're eating and how much salt or sodium they're consuming, how much fat they're consuming. And the purpose is also so people can cross-compare different products. And if you have one manufacturer that is disclosing the sodium and one isn't, then people aren't really be able to cross-compare. Thank you, Justice Breyer. Thank you. Professor, thank you too. The case just argued is submitted.
judges: Vinson, Silverman, Hurwitz